ASSOCIATES DISCOUNT CORP., APPELLEE, *v.* COLONIAL
FINANCE CO., APPELLANT, ET AL.

(No. 3348—Decided March 28, 1950.)

*Messrs. Schermer, Goldstein & Millstone,* for appellee.

*Mr. Morris Mendelssohn,* for appellant.

GRIFFITH, J. · This is an appeal by defendant
Colonial Finance Company, hereinafter called defendant, on questions of law from a judgment of the
Municipal Court of Youngstown.

The action is one in foreclosure of a conditional sales contract on an automobile.

An answer and cross-petition was filed by the defendant, Colonial Finance Company, by virtue of a chattel mortgage which it holds on the same automobile.

On October 12, 1948, George Sanders purchased an automobile from the Midtown Dealers Corporation of New York, for which he agreed to pay $1,315. He made the required down payment and for the balance he executed a note and conditional sales contract for $930. The first installment was due on November 13, 1948, and the Midtown Dealers Corporation negotiated the note and conditional sales contract to the plaintiff, Associates Discount Corporation, which is the owner and holder in due course of the note and conditional sales contract. This conditional sales contract was duly filed with the city registrar on October 26, 1948, pursuant to the laws of the state of New York, the state where the purchaser resided at the time of this transaction. George Sanders obtained a New York state registration certificate which did not show the lien of plaintiff, nor did the New York law require it to be so shown. George Sanders then moved to Youngstown, Ohio, without permission of the plaintiff, and assigned the New York registration certificate to George Sevoko, Midway avenue, Youngstown, Ohio. It appears now that George Sanders and George Sevoko are one and the same person and he assigned this certificate to himself. George Sevoko made application for a certificate of title with the clerk of courts of Mahoning county, and obtained a title which did not show the lien of the Associates Discount Corporation.

George Sevoko sold the car to the Pool Motor Sales, and assigned the certificate accordingly.

The Pool Motor Sales obtained a certificate of title from the clerk's office, and sold the car to Honest George Motors.

Honest George Motors made application and obtained a certificate of title to the car in question and then sold it to Adolph Moses, who obtained a certificate of title to the car.

Adolph Moses, for the balance of the purchase price, executed a note and chattel mortgage to Honest George Motors for $1,000. This note and mortgage were sold and assigned to the defendant Colonial Finance Company, which is the owner and holder in due course of such note and mortgage. The lien was noted on the certificate of title of Adolph Moses.

Upon this state of facts the trial court found and held that the Associates Discount Corporation had the first and best lien on the car.

Defendant maintains that that judgment is contrary to law and ought to be reversed.

The Ohio Certificate of Title Act became effective January 1, 1938. (Sections 6290-2 to 6295-2, inclusive, General Code.)

Prior to that time the settled law of Ohio was clearly expressed in the case of *Kanaga* v. *Taylor* (1857), 7 Ohio St., 134, as follows:

"Where K., residing in the state of New York, took a chattel mortgage from G., who resided in the same place, conditioned to secure part of the purchase money from the chattel which was the subject of the mortgage * * * and the mortgage was registered in the proper office of the same state * * * and G. afterward * * * removed into Ohio, taking with him the chattel, without the knowledge or consent of K., and there made sale of it to a third party, an action by the mortgagee will lie, in this state, to recover the value of the prop-

erty from the purchaser, although he may have bought it without notice of the mortgage lien.''

The defendant recognizes this ancient and well established rule, but counters with the claim that the Certificate of Title Act does away with all this; that it is a radical change in the law as to the sale and transfer of motor vehicles and the registering of liens against them.

In 1935 the Court of Appeals for Hamilton county, in *Reising* v. *Universal Credit Co.,* 50 Ohio App., 289, 198 N. E., 52, following the rule in the *Kanaga case, supra,* held:

''A conditional sales contract executed between residents of another state in conformity with the laws thereof, but which does not in all its terms comply with the laws of Ohio, concerning property located in such other state and afterwards removed to Ohio without the consent or knowledge of the seller or his assignee, will be enforced in Ohio.''

Has the Certificate of Title Act altered the settled law of this state?

If the Ohio Certificate of Title Act were not involved, the problem would be promptly solved by applying the rule expressed in these two well reasoned cases.

The defendant relies upon that part of Section 6290-4, General Code, which provides:

''No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle, hereafter sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued, in accordance with the provisions of this chapter.''

Defendant maintains that this legislative enactment conclusively determines which of two innocent parties is to be protected, and which must suffer.

To begin with, George Sanders purchased the automobile by executing a conditional sales contract, the title to the car to remain in the seller until the $930 balance of purchase price was paid. This was never paid, the title to the car remaining in the seller or its assignee. Sanders removed the car from New York to Youngstown without the consent of the seller, and in violation of the conditional sales agreement. The clear title to the car was never in Sanders. He then assigned the New York title from himself George Sanders to himself George Sevoko. He then, as George Sevoko, applied for an Ohio certificate of title to the clerk of courts of Mahoning county. In so doing he falsely represented that there were no encumbrances on the New York title.

The chain of title was from George Sevoko to Pool Motors Sales, thence to Honest George Motors, thence to Adolph Moses who executed the mortgage to defendant's assignor, all of whom, following George Sevoko, are innocent purchasers for value without notice of Sanders fraudulent conduct.

Since January 1, 1938, three reported cases in Ohio have direct bearing on the problem before us in this case: *Union Commercial Corp.* v. *R. J. Schmunk Co.* (1939), 30 Ohio Law Abs., 116; *Mock* v. *Kaffits* (1944), 75 Ohio App., 305, 62 N. E. (2d), 172; *Automobile Finance Co.* v. *Munday* (1940), 137 Ohio St., 504, 30 N. E. (2d), 1002.

In the case before us it is clear that the source of the defendant's title is the fraudulent and criminal conduct of George Sanders (a) in wrongfully removing the automobile to Ohio, (b) in fraudulently transferring the New York title from himself to himself under another name, (c) in falsely swearing that there were no encumbrances on the New York title, and (d) by fraudulent means procuring an Ohio certificate of title.

It is clear that the purpose of the Certificate of Title Act is to protect owners of automobiles against fraud. (*Automobile Finance Co.* v. *Munday, supra.*)

If the defendant were to prevail in this case, the purpose of the act would not be to protect the owner of the automobile against fraud; but the very purpose of the act would be overridden, and it would protect a title acquired through misrepresentation and fraud and leave the rightful owner empty handed.

If the certificate of title which the clerk of courts of this county issued was issued upon the false representations of George Sevoko, it is void *ab initio* as was said in the *Munday case, supra,* at page 521.

There can be no question that this certificate was improperly issued, and this is the source of defendant's evidence of title.

The defendant, if it is to prevail, must do so on the strength of its own title.

If evidence of title has been procured through fraud and deception, the title of a subsequent innocent holder for value, which arose therefrom can have no greater solemnity than the source from which it sprang. (*Mock* v. *Kaffits, supra,* at page 309.)

It is the judgment of this court that the trial court's judgment must be, and it is, affirmed.

*Judgment affirmed.*

PHILLIPS and NICHOLS, JJ., concur.