Howard L. COLBY, Plaintiff-Appellant,

v.

George V. LONG et al., Defendants-Appellees.

No. 14294.

United States Court of Appeals Sixth Circuit.

April 15, 1961.

Charles J. Chastang, Columbus, Ohio
(Marcus, McCroskey & Finucan, Muske-
gon, Mich., and Charles J. Chastang and
Edward D. Schorr, Jr., Columbus, Ohio,
on the brief), for appellant.

Fred R. Wickham, Delaware, Ohio (Arthur M. Sebastian; Sebastian, Fais & Durst, Columbus, Ohio, on the brief), for appellees.

Before MILLER, Chief Judge, and McALLISTER and WEICK, Circuit Judges.

WEICK, Circuit Judge.

This action was brought in the District Court by the appellant, Howard L. Colby, a resident and citizen of the State of Michigan, to recover damages for serious personal injuries sustained by him while he was riding in an automobile that was involved in a collision with two other motor vehicles in the night season of December 17, 1956 on U. S. Route 23, in Delaware County, Ohio.

Colby occupied the right front seat of the automobile which was being driven by his stepson, Ronald De Marrow. Colby's son, Howard Lee Colby, hereafter referred to as Lee, was seated in the rear of this automobile with one of his Navy friends. Appellee, George V. Long and Sons, by George V. Long, had been operating a half-ton pickup truck in a northerly direction on U. S. Route 23. The truck stalled and stopped in the center of the easterly lane of the highway without lights. U. S. Route 23 at this point is a four-lane divided highway. The automobile, in which Colby was riding, was proceeding in a northerly direction in the easterly lane of the highway. Appellee, McClaskey, was also proceeding in a northerly direction in the easterly lane of the highway to the rear of the automobile in which Colby was riding. The automobile, in which Colby was riding, collided with the left rear of the Long truck with its right front end. Almost simultaneously or only after a two or three second lapse in time, the McClaskey automobile struck the left side of the automobile in which Colby was riding. As a result, Colby sustained severe injuries which resulted in the amputation of his right leg just below the hip socket.

Colby claimed that the automobile in which he was riding had been purchased by his son Lee, in Michigan, when he was sixteen years of age; that it belonged to Lee; that because of Lee's minority, and to facilitate the financing of the automobile, it was titled jointly in both their names in Michigan. The Colby family moved to Oregon where the title to the automobile was registered jointly in the names of Colby and his son, Lee. Oregon license plates were placed on the car. Thereafter, Lee entered the Navy from Oregon. Later the Colby family returned to Michigan. The automobile was driven from Oregon to Michigan by Lee's mother, but the title registration in Oregon had not been changed. During the time Lee was in the Navy, the automobile was used by his stepbrother Ronald De Marrow and his mother with his permission. The evidence tended to prove that Lee had made the down payment on the purchase price of the automobile, the payments to the finance company, painted the car, purchased insurance, paid for the license plates, bought tires and other parts and took care of the upkeep.

Shortly before Christmas, 1956, Lee called his mother, who was in Michigan, by telephone and informed her that he was in Norfolk, Virginia, and asked if his stepbrother, Ronald De Marrow, would drive his car to him so he could drive home for Christmas and transport souvenirs he had brought with him from overseas. In response to this request, Colby and his stepson Ronald drove Lee's automobile to Norfolk. Colby and Ronald paid for the gasoline and oil on the trip to Norfolk and each drove part of the way. In Norfolk, Lee invited two of his Navy friends to ride in the car, one to go as far as Columbus, Ohio, and the other to spend Christmas at Lee's home. Lee paid for the gasoline and oil after leaving Norfolk. One of his Navy friends paid $5.00 to help defray the expense. The men took turns driving the automobile. Colby had driven the car just prior to Ronald becoming the driver.

After discharging one of Lee's Navy friends in Columbus, Ohio, the party proceeded north and the collision occurred.

The case was tried before a jury. At the close of plaintiff's evidence the District Judge directed a verdict in favor of defendants Long who owned the unlighted parked truck. The District Judge determined that the driver of the Colby car, Ronald De Marrow, was guilty of negligence proximately causing plaintiff's injuries as a matter of law in that De Marrow drove the automobile at a greater speed than would permit him to bring it to a stop within the assured clear distance ahead in violation of R.C. § 4511.21.[1] He ruled further that De Marrow's negligence should be imputed to Colby.

The District Judge submitted the case to the jury against McClaskey. He instructed the jury that Colby was contributorily negligent as a matter of law because De Marrow's negligence was imputed to him. He ruled that McClaskey was not negligent as a matter of law and submitted to the jury the factual issue whether McClaskey drove his automobile at a greater speed than would permit him to bring it to a stop within the assured clear distance ahead. The Judge also instructed the jury on last clear chance.

The jury returned a verdict in favor of McClaskey.

The District Judge, in imputing De Marrow's negligence to Colby, held this was required by the Ohio Certificate of Title statute.[2] He ruled that since the testimony was to the effect that the Oregon registration of title was in the name of Colby and his son Lee, that Colby was an owner and there was a presumption that he was in control of the car, and that De Marrow was his agent; that this presumption was not rebutted; that De Marrow's negligence was, therefore, imputed to Colby.

■ In ruling that the Ohio Certificate of Title law applied, the District Judge gave the Ohio statute extraterritorial effect. The registration of title to the Colby automobile in Oregon to residents of that state was governed by Oregon law, certainly while the car was located there. Where the automobile, title to which had been registered in Oregon was involved in an accident while it was being driven through the State of Ohio, does the Ohio law supersede Oregon with respect to legal questions relating to the Oregon registration of title? We think not. In our opinion, the law of Oregon governed with respect to the legal effect of its registration of title. Austin v. River, 95 Ohio App. 400 (Syl. 3), 120 N.E.2d 133; Restatement of the

1. "No person shall operate a motor vehicle, trackless trolley, or streetcar in and upon the streets and highways at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions, and no person shall drive any motor vehicle, trackless trolley, or streetcar in and upon any street or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead."

2. R.C. § 4505.04.
"No person acquiring a motor vehicle from the owner thereof, whether such owner is a manufacturer, importer, dealer, or otherwise, shall acquire any right, title, claim, or interest in or to said motor vehicle until such person has had issued to him a certificate of title to said motor vehicle, or delivered to him a manufacturer's or importer's certificate for it; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title, or manufacturer's or importer's certificate for said motor vehicle, for a valuable consideration.

"No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:

"(A) By a certificate of title or a manufacturer's or importer's certificate issued in accordance with sections 4505.01 to 4505.19, inclusive, of the Revised Code.

"(B) By admission in the pleadings or stipulation of the parties."

Law, Conflicts of Laws §§ 256, 258, 260. Ohio law governed as to the tort liability of the parties.

The Ohio courts have held almost from the time of the enactment of the Certificate of Title statute that it was not to be given extraterritorial effect. State ex rel. City Loan & Savings Co. v. Taggart, 134 Ohio St. 374, 17 N.E.2d 758; Ohio Casualty Insurance Co. v. Guterman, 97 Ohio App. 237, 125 N.E.2d 350; In re Swesey, D. C., 112 F.Supp. 773.

▇ In Oregon, the registration of title is not conclusive, but only prima facie evidence of ownership of a motor vehicle.[3] Fagg v. Mass. Bonding & Ins. Co., 142 Or. 358, 19 P.2d 413; Dicillo v. Osborn, 204 Or. 171, 282 P.2d 611.

▇ The Oregon registration of title was a public act and record of that state and was entitled to full faith and credit by the courts of Ohio. Gibson v. Bolner, 165 Ohio Supp. 357, 135 N.E.2d 353.

At the trial the District Judge excluded oral testimony tending to prove that the automobile actually belonged to Lee; that Lee bought and paid for the car; that his father had a car of his own and had no interest in Lee's car; that his father's name had been placed on the certificate of title only to facilitate in financing the balance due on the purchase price because of his minority. The reason given for excluding the evidence was that it disputed the certificate of title. In re Estate of Case, 161 Ohio St. 288, 118 N.E.2d 836.

▇ The proffered evidence which the District Judge excluded was clearly admissible, under Oregon law, to rebut the prima facie presumption of ownership established by the Oregon registration of title and tended to prove that Lee and not Colby was the owner in posses-

sion and control of the automobile and that De Marrow was not Colby's agent. Since we have held that Oregon law is controlling, the District Court was in error in rejecting the evidence.

Under Ohio law, the certificate of title does not conclusively establish the issue of control. In Ross v. Burgan, 163 Ohio St. 211, 126 N.E.2d 592, 594, 50 A.L.R. 2d 1275, it was held that where the owner of an automobile driven by another is an occupant thereof there is only a rebuttable presumption or inference that the owner has control over it and that the driver is acting as his agent. In that case the husband was driving an automobile owned by his wife who was present in the car at the time of the accident.

Judge Zimmerman, who wrote the opinion for the court, said:

"In Ohio, the so-called family-purpose doctrine (5 American Jurisprudence, 704, Section 365, 6 Ohio Jurisprudence (2d), 518 Section 271 et seq.) is not accepted. This court has held that where the owner of an automobile permits his wife or other members of his family, presumably qualified drivers, to use his automobile there is no liability on his part for its negligent operation unless evidence is produced showing a principal-agent or master-servant relation between the absent owner and the driver at the time of an injury. (citing authority)"

After carefully reviewing the authorities, Judge Zimmerman stated the Ohio rule to be that where the owner is present in his automobile there is only a rebuttable presumption or inference that the driver is acting as his agent.

In the Ross case, it is significant that the Supreme Court approved the instruc-

---

3. "Oregon Statutes, Sec. 481.515, [481.-117]. Proof, in Court, of ownership or right to possession of vehicle. In all actions, suits or criminal proceedings when the title to, or right of possession of, any motor vehicle, trailer or semi-trailer is involved, the record of registration and license, as it appears in the files and records of the department, is prima facie evidence of ownership or right to possession of such vehicle. Such proof of the ownership or right to possession shall be made by means of a copy, certified by the department, of the record of the vehicle, as it appears in the files and records of the department, or by the original certificate of title issued by the department."

tions given to the jury by the trial judge on the subject of ownership and control. If the Supreme Court had felt that the trial judge should have determined the issue of control as a matter of law and directed a verdict, it would have said so instead of approving his instructions. In our case, the facts requiring submission of the issue of control to the jury were much stronger than in the Ross case where the evidence was meager.

■ The District Judge refused to admit the Oregon registration of title in evidence. In our judgment, this was error. Gibson v. Bolner, 165 Ohio St. 357, 135 N.E.2d 353. Without the registration of title in evidence, ownership of the automobile was not established under either Ohio or Oregon law. Peters Motors, Inc. v. Rodgers, 161 Ohio St. 480, 120 N.E.2d 80; Mielke v. Leeberson, 150 Ohio St. 528, 83 N.E.2d 209, 7 A.L.R. 2d 1342; Austin v. River, 95 Ohio App. 400, 120 N.E.2d 133; Oregon Statutes § 481.515. Since ownership of the automobile was not established in the manner provided by law, the District Judge did not have the right to determine as he did that Colby was an owner of the automobile and De Marrow's negligence was imputed to him.

■ It follows from what has been said that the District Judge erred in imputing the negligence of De Marrow to Colby and in directing a verdict in favor of defendants Long. He erred in instructing the jury that De Marrow's negligence was imputed to Colby. The question of control of the automobile was a factual one for the jury to determine from all the evidence in the case under proper instructions from the court. This evidence included not only that relating to the actual ownership of the automobile, but the dominion exercised over it by Lee in painting it, buying insurance, tires and other parts, license plates and looking after its maintenance and use; in his arranging to have the car sent to him in Norfolk and his taking charge of it there; in inviting his Navy friends to ride, paying for the gasoline and oil and accepting a small payment from one

of his friends. This evidence of dominion, in our judgment, required submission of the issue of control to the jury without even considering the evidence relating to ownership which the court excluded. Ross v. Burgan, supra.

■ Longs were negligent as a matter of law in not having their truck equipped with flares, fusees, lanterns and flags and for failure to display such equipment as provided by the Ohio Statutes. R.C. §§ 4513.27, 4513.28; Bush v. Harvey Transfer Co., 146 Ohio St. 657, 67 N.E.2d 851.

■ The District Judge was correct in ruling that De Marrow was negligent as a matter of law in driving the automobile at a speed which would not permit him to stop the automobile within the assured clear distance ahead. R.C. § 4511.-21; Skinner v. Pennsylvania Railroad Co., 127 Ohio St. 69, 186 N.E. 722; Gumley v. Cowman, 129 Ohio St. 36, 193 N.E. 627; Higbee Co. v. Lindemann, 131 Ohio St. 479, 3 N.E.2d 426; McFadden v. Elmer C. Breuer Transportation Co., 156 Ohio St. 430, 103 N.E.2d 385.

The assured clear distance ahead statute applied with equal force to McClaskey.

He was following at the rear of the Colby car at the time of the accident. He testified that the Colby car had passed his car and at the time of passing he, McClaskey, was going 55 miles an hour; that he followed the Colby car 150 feet; that after the Colby car had passed him the tail light went out and "a fog just went right up ahead of it"; that he then started putting on brakes, turned into the left gutter at the side of the north lanes of the highway and then came out of the gutter and collided into the left side of the Colby car.

It is clear that McClaskey was operating his automobile at a speed which was greater than would permit him to bring it to a stop within the assured clear distance ahead. He was, therefore, negligent as a matter of law.

■ The fog which McClaskey claims developed ahead would not excuse noncompliance with the statute. Woods v.

Brown's Bakery, 171 Ohio St. 383, 171 N.E.2d 496.

The issue of proximate cause was one of fact for the jury to determine.

There was no evidence to warrant the instruction to the jury on last clear chance.

For errors of law in excluding evidence, directing a verdict in favor of defendants Long and in the instructions to the jury, the judgment of the District Court is reversed and the cause remanded for a new trial.

Soper, Circuit Judge, dissented.